IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISOBUNKERS, L.L.C. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 09-879 |
| | : | |
| EASTON COACH COMPANY | : | |

**MEMORANDUM**

**Juan R. Sanchez, J.**                                                             February 8, 2010

Plaintiff ISObunkers, L.L.C. (ISObunkers) is a wholesaler of petroleum fuel. Defendant Easton Coach Company (Easton) is a private company that provides transportation services in Pennsylvania, New Jersey, and the surrounding area. This case arises from a contract dispute over Easton's purchase of fuel from ISObunkers. Easton moves for summary judgment on ISObunkers's breach of contract and promissory estoppel claims. For the following reasons, the Court will grant Easton's motion.

**FACTS**

Easton works with Metro Plus, a division of the Lehigh and Northampton Transportation Authority (LANTA), to provide transportation services for individuals unable to access the regular transit system. In spring 2008, Easton and LANTA jointly requested bids for the purchase of diesel fuels. The request called for fixed-price bids on both clear diesel fuel and red dye diesel fuel.

The Easton and LANTA bid requests were included in a single document, entitled Request for Bids, issued from the LANTA office. The LANTA office had additional copies of the Request for Bids forms and was designated as the location for the receipt of bid submissions. The Request for Bids, however, had distinct sections for LANTA and Easton bids. The LANTA portion of the

bid request was labeled "Section - A - LANTA," and the Easton portion was labeled "Section B - Easton Coach Company." Additionally, in the section detailing the general conditions of the Request for Bids, the Request indicated bids were "for two (2) different companies and [could] be awarded to different bidders based upon the price submitted." Def.'s Req. for Bids at 6.

ISObunkers, working through its agent Phoenix Petroleum, submitted a proposal on May 12, 2008, containing two separate bids for the Easton and LANTA contracts. On May 13, 2008, Easton's President, Joseph Scott, called Thomas Hagan of Phoenix Petroleum to confirm that Easton would be accepting the red dye portion of ISObunkers's bid. During that conversation, Scott and Hagan acknowledged and briefly discussed a termination provision included in the contract attached to the Request for Bids.[1] The provision reads: "Upon thirty (30) days written notice, either party may terminate this contract." Def.'s Req. for Bids at 23. On the same day, Scott sent ISObunkers a letter and an e-mail confirming Easton's acceptance of the red dye diesel fuel bid. The following day, May 14, 2008, Scott sent ISObunkers a letter confirming that Easton had accepted ISObunkers's clear diesel fuel bid as well.

The resultant contract between Easton and ISObunkers was for June 1, 2008, until May 31, 2009. After being awarded the contract, ISObunkers secured fuel futures contracts on the New York Mercantile Exchange to ensure it would have the diesel fuel necessary to supply Easton. The business relationship between Easton and ISObunkers continued as planned until September 2, 2008, when Easton faxed ISObunkers a letter providing thirty days written notice that Easton intended to exercise the contract's termination clause and withdraw from the purchase agreement, effective

---

[1] The provision makes no mention of a penalty for exercising the clause or the terminating party assuming the other party's costs. *Id*.

October 2, 2008. Easton revoked this termination notice on September 9, 2008, after ISObunkers argued terminating the contract before the expiration date would render Easton liable for ISObunkers's costs incurred purchasing the fuel futures contracts on the Mercantile Exchange. After attempts to resolve this dispute failed, however, Easton sent ISObunkers another letter on October 23, 2008, again providing notice of Easton's intent to terminate effective November 23, 2008. Easton subsequently terminated the contract on that date.

ISObunkers filed this action on February 27, 2009, asserting breach of contract and promissory estoppel claims against Easton. Easton moved for summary judgment, arguing (1) Easton did not breach any duty owed to ISObunkers, and (2) ISObunkers is unable to maintain a promissory estoppel claim because the parties entered into an enforceable contract.

**DISCUSSION**

A moving party is entitled to summary judgment in its favor "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). When addressing a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) (citation and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citation and internal quotation marks omitted).

To withstand a motion for summary judgment on a breach of contract claim under Pennsylvania law, the non-moving party must establish the existence of a genuine issue of material fact regarding the "(1) existence of a binding contract; (2) breach of a duty imposed by the contract;

and (3) damages."[2] *Harry Miller Corp. v. Mancuso Chems. Ltd.*, 469 F. Supp. 2d 303, 322 (E.D. Pa. 2007) (citation omitted); *see also Omicron Sys. Inc. v. Weiner*, 860 A.2d 554, 564 (Pa. Super. 2004) (same). To withstand a motion for summary judgment on a claim of promissory estoppel under Pennsylvania law, the non-moving party must establish the existence of a genuine issue of material fact as to whether "(1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000); *Burton Imaging Group v. Toys "R" Us, Inc.*, 502 F. Supp. 2d 434, 438-39 (same).

Easton maintains it is entitled to summary judgment on ISObunkers's breach of contract claim because ISObunkers is unable to establish a genuine issue of material fact as to whether Easton breached a duty imposed by the contract. In response, ISObunkers asserts there is a genuine issue of material fact as to whether Easton breached such a duty by failing to pay costs ISObunkers incurred as a result of termination. ISObunkers makes two arguments in support of the existence of such a duty.

First, ISObunkers argues the fixed price term of the contract between it and Easton required Easton to pay ISObunkers's costs in the event Easton exercised its rights under the termination clause. To determine whether this duty exists, the Court will look to the terms of the contract.

---

[2] The parties have not addressed which state's law governs the contract. Because both parties cite Pennsylvania law and have not identified any choice-of-law issues, this Court will apply Pennsylvania law. *See Austin Power Co. v. Popple Constr., Inc.*, No. 04-4671, 2006 WL 360859, at *3 n.1 (3d Cir. Feb. 17, 2006) (applying Pennsylvania law where the parties did not address which law applied to an agreement but cited only Third Circuit and Pennsylvania law).

"When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed." *E. Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965); *see also Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 750 (Pa. 2002) ("Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy."). The express terms of a contract can be modified by industry custom only when those terms are unclear. *See Gallizzi v. Scavo*, 179 A.2d 638, 642 (Pa. 1962) ("Where the terms are clear and unambiguous, they cannot be varied or contradicted by evidence of usage."); *Smith v. Pennbridge Assocs., Inc.*, 655 A.2d 1015, 1020 (Pa. Super. 1995) ("[C]ustom cannot prevail where the terms of a contract are clear and unambiguous.") (internal quotation marks omitted). Courts are permitted to imply conditions not included in a contract only in rare circumstances. *Solomon v. U.S. Healthcare Sys. of Pa., Inc.*, 797 A.2d 346, 350 (Pa. Super. 2002). Implication of terms must be necessary to prevent injustice, and it must be clear the parties intended to be bound by the terms the court implies. *Id.* If a contract does not address an issue, a court will presume the parties intentionally chose not to address it. *See Daniels v. Bethlehem Mine Corp.*, 137 A.2d 304, 308 (Pa. 1958) (noting, in interpreting a contract, a court will look to what the parties "have clearly expressed, for the law does not assume the language of the contract was chosen carelessly") (citations omitted).

Here, ISObunkers concedes it is "undisputed that the contract has a provision that allows either party to terminate the contract" but claims that the "ramifications of termination" are only clear after viewing the terms of the agreement with "an understanding of the customs and business practice established in [the diesel fuel supplying] industry." Pl.'s Br. at 9. Evidence of custom,

5

however, is only permissible to modify unclear contractual terms, and the termination clause here is unambiguous. The clause allows either party to terminate the contract with thirty days written notice and makes no mention of a penalty for termination under the clause. *See* Def.'s Req. for Bids at 23. ISObunkers essentially asks this Court to imply a term, requiring Easton to pay ISObunkers's costs in purchasing fuel futures contracts, that the parties did not include in their contract. This Court will not go beyond the clear and unequivocal language of the contract to imply a term the parties chose not to include. This Court can only assume that the parties' decision not to include a term imposing penalties for exercise of the termination clause was intentional. *See Daniels*, 137 A.2d at 308 (explaining courts, in interpreting contracts, look to what parties clearly expressed and assume language was intentionally chosen).

Alternatively, ISObunkers argues Easton verbally requested that ISObunkers purchase fuel futures contracts. In effect, ISObunkers asserts this alleged oral agreement modified the terms of the written agreement. The deposition testimony on record, however, directly contradicts ISObunkers's assertion Easton made such a request. The President of ISObunkers and the Director of Marketing for Phoenix Petroleum, ISObunkers's agent, both testified Easton did not ask ISObunkers to purchase fuel futures contracts.[3] The deposition testimony ISObunkers cites in support of this alleged oral modification fails to substantiate its claim.[4] Since ISObunkers is unable to identify any

---

[3] *See* Joanedis Dep. 58:9-14, Aug. 27, 2009 (Q: "Nobody at Easton Coach told anyone at Isobunkers to buy oil futures contracts, correct? A: No. Q: No, that is not correct? A: "No, they did not."); Hagan Dep. 55:8-9 Aug. 27, 2009 (Q: "Did [Easton] instruct you to [purchase futures contracts]?" A: "[Easton] did not instruct me [to do that]. No one instructs us to lock in futures contracts.").

[4] When directly asked if Easton requested ISObunkers to purchase fuel futures contracts, ISObunkers's Managing Member, Thomas Powell, failed to respond affirmatively. *See* Powell Dep. 92:11-15, Aug. 25, 2009.

evidence supporting its position that Easton orally requested it to purchase fuel futures contracts, ISObunkers fails to raise a genuine issue of material fact as to whether the contract was modified by an oral agreement. Taking the record as a whole, a rational trier of fact could not find the contract between ISObunkers and Easton was orally modified to require Easton to pay ISObunkers's costs in the event of early termination.

Second, ISObunkers argues Federal Transit Administration (FTA) regulations apply to the contract and require Easton to pay ISObunkers's costs in the event of an early termination. ISObunkers points to a 2003 FTA Circular (Circular) it argues proves Easton is required to pay such costs. Regulations promulgated by the Office of the Secretary of Transportation governing transit authorities (FTA Regulations) work to establish "uniform administrative rules for Federal grants and cooperative agreements and subawards." 49 C.F.R. § 18.1. FTA Regulations apply only to recipients of FTA grants; they do not apply to private companies.[5] *Id.* The FTA grantees and subgrantees covered by the Circular are required, in contracts over $10,000 in value, to provide for the "manner by which [termination] will be effected and the basis for settlement." *Id.* ¶ 15. It is this rule ISObunkers urges this Court to apply to Easton.

Easton, however, is a private company and has never received funding from the FTA. Scott Aff. at ¶¶ 3, 5. FTA funds have never been used by Easton to purchase fuel from ISObunkers. *Id.* Because Easton is not a recipient of a FTA grant, it is not subject to FTA regulations. ISObunkers, seemingly aware of this fact, argues it was "ISObunkers' understanding that LANTA and Easton Coach were homogenous" for purposes of the bid request. Pl.'s Br. at 15. In support of this belief,

---

[5] The Circular confirms this, noting its requirements apply only to "FTA grantees and subgrantees" who contract with third parties. Dep't of Trans., Third Party Contracting Requirements, C4220.1E at ¶ 4 (June 19, 2003).

7

ISObunkers points out the Easton and LANTA bid requests were both included in a consecutively paginated document sent from LANTA in a single envelope. Further, ISObunkers notes, additional bid request forms were available at the LANTA office, and completed forms were to be submitted to LANTA. ISObunkers asserts that, because LANTA and Easton appeared to ISObunkers to be one entity, Easton should be held to the same FTA Regulations to which LANTA, a recipient of FTA funding, is held.

An examination of the Request for Bids, however, makes clear the Request calls for bids for two distinct companies. There is a section of the Request labeled for the LANTA bid, and a section clearly labeled for the Easton bid. Additionally, the Request explicitly states bids are requested by two different companies. Furthermore, ISObunkers's subjective belief about Easton's status as a FTA grant recipient is immaterial. As Easton is not subject to FTA regulations, no duty based on those regulations could arise between Easton and ISObunkers.

Because ISObunkers fails to establish a genuine issue of material fact as to Easton's breach of a duty owed to ISObunkers under the contract, Easton is entitled to summary judgment on ISObunkers's breach of contract claim.

Finally, Easton maintains it is also entitled to summary judgment on ISObunkers's promissory estoppel claim because the enforceable contract between the parties precludes any such claim. Under Pennsylvania law, an enforceable contract between two parties precludes relief for a claim of promissory estoppel. *See Carlson v. Arnot-Ogden Mem'l. Hosp.*, 918 F.2d 411, 416 (3d Cir. 1990) ("In light of our finding that the parties formed an enforceable contract, relief under a promissory estoppel claim is unwarranted."). Promissory estoppel is reserved for situations "where the formal requirements of contract formation" have failed. *Id.* When an express contract exists,

8

however, the parties' recovery is limited to the measures provided in the contract. *Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987) (citing *Murphy v. Haws & Burke*, 344 A.2d 543 (Pa. Super. 1975)). Additionally, promissory estoppel claims should not be used to modify an enforceable contract. *See Tomlinson v. Checkpoint Sys., Inc.*, No. 06-2205, 2008 WL 219217, at *6 (E.D. Pa. Jan. 25, 2008) ("Promissory estoppel should not be used to supplement or modify a written, enforceable contract.").

ISObunkers does not deny the existence of a valid contract between the two parties. In fact, ISObunkers references the contract in making its promissory estoppel argument. *See* Pl.'s Br. at 22-24. At its core, ISObunkers's promissory estoppel claim is an attempt to modify the express language of the contract on the basis of alleged industry custom and ISObunkers's misunderstanding of the contract's terms. As it concedes the existence of a valid contract between the parties, ISObunkers is precluded from bringing a promissory estoppel claim against Easton. Easton is thus entitled to summary judgment on ISObunkers's promissory estoppel claim.

An appropriate order follows.